**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| KATHLEEN STRANG, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CASE NO.: 1:12-CV-72 (WLS) |
| : | |
| CITY OF ALBANY, GEORGIA *et al.*, : | |
| : | |
| Defendants. : | |
| : | |

**ORDER**

Before the Court are Defendant Melanie Slanton's Motion to Dismiss (Doc. 37) and Defendants the City of Albany, Willie Adams, Dorothy Hubbard, Christopher Pike, Roger Marietta, Bob Langstaff, Tommie Postell, Alfred Lott and C. Nathan Davis' Motion to Dismiss (Doc. 39). For the reasons that follow, Slaton's motion to dismiss is **GRANTED** and the City Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

**I.     Procedural Posture**

This is a 42 U.S.C. § 1983 action against the City of Albany, Georgia, and its mayor, city commissioners, city attorney, and a private attorney hired to handle the plaintiff's termination. Plaintiff Kathleen Strang, a former assistant city attorney, claims Defendants retaliated against her for exercising her First Amendment rights and discriminated against her on the basis of race. Strang filed a thirty-five-page, 274-paragraph complaint containing these allegations on June 15, 2012. The Court ordered her to file a more definite statement.  Strang's more definite statement, a Second Amended Complaint, is now the object of two motions to dismiss for failure to state a claim and qualified immunity.

1

The amended complaint alleges the following. From March 2006 to June 2010, Strang worked in the City Attorney's Office under Defendant City Attorney C. Nathan Davis. Strang claims that, because of a "policy of institutional discrimination in favor of black employees," Davis, a white man, treated Strang, a white woman, less favorably than black employees. Davis allegedly also sought to deflect allegations of racism against himself by painting Strang as racist against black employees.

The complaint alleges that "Davis routinely treated [Strang] with disrespect" and "on one occasion" belittled her in front of other employees. Davis would also disrupt Strang's conversations by propping open doors and following Strang into the break room and sitting with her while she talked to friends. Unnamed defendants put Strang in a counseling program after one of the office secretaries accused Strang of being racist.

In 2008, Jenise Smith, a black woman, began working at the City Attorney's Office a few hours daily as an unlicensed intern. When Smith arrived, a paralegal and Strang told each other Davis would offer Smith a job because she was black.

Strang alleges Davis treated Smith with respect and gave her training and professional opportunities he did not give her. For example, Davis submitted a joint legal opinion to the city with Smith, describing her as an "assistant city attorney," when she was not licensed to practice law. Davis also allowed Smith to give a presentation to the City Commission and told Strang he would never allow her to do the same. Even though Davis told Strang he would not authorize any out-of-state training, he authorized Smith to travel to Washington, D.C., for training.

Meanwhile, Davis required Strang to do clerical duties when the office paralegal was on maternity leave, though the office had two secretaries. He told Strang, however, not to criticize Smith for never answering the phone. At the same time, Davis allegedly

2

tried to undermine Strang's work by denying her access to evidence, destroying evidence, and cutting her out of office communications.

In March 2010, Strang found a handgun in Davis' office. Strang reported her finding to the City Equal Employment Opportunity (EEO) manager "in confidence, because she was concerned she would be fired" for reporting it. "The EEO manager judged Davis' action to be an act of workplace violence, and without [Strang's] knowledge immediately reported this discovery to the assistant city manager." City manager Alfred Lott and Mayor Willie Adams met with Davis to discuss the handgun. Lott and Adams then suspended Davis for three days.

Following his suspension, Davis allowed office staff to require Strang to attend a mandatory meeting that he did not attend. He also "authorized and/or condoned" office staff to "belittle, berate, abuse, and attack" Strang and "to repeatedly demand that she apologize to them for having 'embarrassed' the office by reporting" Davis. About one week later, Davis demanded that Strang resign for being "too disruptive" to the office. Strang refused.

A few days later, Mayor Adams, Davis, and City Commissioners Dorothy Hubbard, Christopher Pike, Bob Langstaff, Roger Marietta, and Tommie Postell met in a closed, executive session to discuss Strang's employment. During the executive session, the commission decided to fire Strang, even though "they had no authority to do so" and "no discretion to consider her employment." The defendants then "instigated and/or encouraged local media coverage" of the incident. A local reporter told Strang that "[e]veryone knows it's about the gun."

Adams, Marietta, Postell, Pike, Hubbard, and Langstaff held a second executive session to hear evidence and argument regarding Strang's employment. In connection with their review of Strang's employment, some of the defendants hired Melanie Slaton,

3

a private attorney, to handle the termination. Slaton met with Strang, ostensibly to discuss her grievance against Davis. During the meeting, however, Slaton did not ask Strang questions about her grievance but informed Strang that the defendants "would not tolerate" her continued employment with the city. During her representation, "Slaton acted as an interested party . . . because she wanted to handle employment issues on a contract basis for the City, instead of [Strang] handling such matters."

Because the city commissioners could not fire Strang, they directed city manager Lott to do so. Slaton, Lott, and Davis "accused her of legal 'negligence' for failing to observe a deposition that [Strang] in good faith thought had been cancelled, in a case which [Strang] alone analyzed properly and for which [she] secured summary judgment for the city." During the termination appeal, Slaton presented "racially inflammatory testimony" by "falsely calling [Strang] legally negligent and racist."

Strang alleges that Lott called her racist and fabricated allegations against her. He allegedly told another person that he "thought a black employee would have been justified if she physically hit [Strang]." Slaton also allegedly portrayed Strang as being racist against black employees, by, for example, eliciting testimony Strang called another employee a "black bitch." Strang also alleges that city commissioner Pike "called the City EEO manager a 'liar' for disputing allegations of 'racism' against [Strang], despite the fact he did not know [Strang] but did know that [Strang] had black friends." Strang claims defendants replaced her with a black attorney. After Strang's termination, the City, Slaton, and Davis appealed her award of unemployment benefits.

Strang claims the City is liable for these actions because the actors were its agents and "were completely under its control at all times relevant to this action." Additionally, she asserts that the "City defendants allowed, condoned, and ratified the abusive, hostile work Environment [sic] created and fostered by defendant Davis."

4

Strang has sued all of the defendants, except the city of Albany, in their individual capacities.

## II. Motion to Dismiss Standards

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A Motion to Dismiss a Plaintiff's complaint under Rule 12(b)(6) should not be granted unless the Plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)).

While the Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff," *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), in evaluating the sufficiency of a Plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but [is] not required to draw Plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005*)), abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). The Supreme Court instructs that while on a Motion to Dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual al-

5

legations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint).

### III. Discussion

Despite the Court's numerous attempts to focus her filings, Strang's Second Amended Complaint and various responses are not models of clarity. The Court nevertheless gleans the following causes of action from her complaint: (1) First Amendment retaliation arising from her termination; (2) First Amendment retaliation arising from other alleged retaliatory acts; (3) race-based hostile work environment; and (4) race-based disparate treatment.

**A. Individual Liability**

Before turning to Strang's specific causes of action, the Court dismisses a number of improper parties from Strang's first and fourth claims. Strang sues Defendants Adams, Hubbard, Pike, Marietta, Langstaff, Postell, Lott, Davis and Slaton in their individual capacities alone. To hold a government official individually liable under Section 1983, the official must be the official "decisionmaker" for the aggrieved action. *Kamensky v. Hillsborough County*, 148 F. App'x 878, 879 (11th Cir. 2005); *Redding v. Tuggle*, No. CIVA105CV-2899WSDLTW, 2007 WL 2462641, at *28 (N.D. Ga. Jul. 11, 2007). An official decisionmaker is one who has power to make the complained-of decisions. *See Quinn v. Monroe County*, 330 F.3d 1320, 1326–27 (11th Cir. 2003). An official who has no power to terminate an individual, only to recommend that action, cannot be held individually liable under Section 1983 for claims arising out of the termination. *Kamensky*, 148 F. App'x at 880; *Sanders v. City of Selma*, No. Civ.A.04-754 B, 2005 WL 3411342, at *4 (S.D. Ala. Dec. 13, 2005).

In several paragraphs in her complaint, Strang alleges that Davis, the city commissioner defendants, and the mayor had no authority to fire her. Rather, "because they lacked legal authority [to fire her], they directed their agent defendant Lott to fire Plaintiff." Strang also claims that "[s]hortly [after her termination] defendants mayor and/or commissioners enacted an ordinance to give themselves such legal authority, because they were not able to fire Plaintiff directly and had to direct defendant Lott to do it for them." Two of Strang's legal theories—First Amendment retaliation and disparate treatment—are premised on her termination. But because the complaint alleges that only Lott had authority to fire her and actually carried out that action, he alone can be individually liable for these claims.

Therefore, the Court dismisses Adams, Hubbard, Pike, Marietta, Langstaff, Postell, Davis and Slaton from the First Amendment retaliation claim arising from her termination and the disparate treatment claim. As the complaint alleges, they had no authority to fire Strang, so they cannot be individually liable for constitutional violations allegedly arising from her termination.

### B. Claims against the City of Albany

City Defendants urge the Court to dismiss the City of Albany because Strang has failed to allege a viable theory of municipal liability. "Municipal liability may arise with regards to an employment decision, such as a termination, provided that the decisionmaker 'possesses final authority to establish municipal policy with respect to the action ordered.'" *Quinn*, 330 F.3d at 1325 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)). Here, Strang states a plausible claim for relief against the city for disparate treatment and First Amendment retaliation because the complaint contains sufficient facts to suggest Lott was the final policymaker for adverse employment decisions.

### C. First Amendment Retaliation

Defendants Lott and the City of Albany, the only remaining defendants on Strang's retaliatory termination claim, argue Strang fails to state a First Amendment retaliation claim because (1) she spoke as an employee on a matter of personal concern and (2) their interests as employers outweigh Strang's interest in free speech. The Court finds both arguments unpersuasive.

The First Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, prohibits government actors from unduly abridging freedom of speech. U.S. Const. amend. I. The Supreme Court has long held that citizens do not relinquish First Amendment protection when they accept public employment. *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will County, Illinois*, 391 U.S. 563, 568 (1968). And it follows that a public employer may not fire its employees for exercising First Amendment rights. *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007) (citing *Rankin v. McPherson*, 483 U.S. 378, 383 (1987)).

At the same time, a public employee's interest in discussing matters of public concern must be balanced against the employer's interest "in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. Federal courts therefore apply a three-step test to determine whether an employee's speech is protected under the First Amendment: a plaintiff must show (1) that the speech can be fairly characterized as relating to matter of public concern, (2) that her interests as a citizen outweigh the interests of the city as an employer, and (3) that the speech played a substantial or motivating role in the government's decision to take an adverse employment action. *E.g.*, *Akins v. Fulton County*, 420 F.3d 1293, 1303 (11th Cir. 2005).

### i.     Whether Strang spoke as a citizen on a matter of public concern

To receive First Amendment protection, Strang must show, as a threshold matter, that she spoke as a citizen on a matter of public concern. *Rankin v. McPherson*, 483 U.S. 378, 384 (1987). Speech of a public concern "must relate to a matter of political, social, or other concern to the community." *Watkins v. Bowden*, 105 F.3d 1344, 1353 (11th Cir. 1997). The First Amendment is generally not implicated when the employee speaks only on matters of personal concern. *Connick v. Myers*, 461 U.S. 138, 146 (1983). But "[e]ven if [a plaintiff] discussed private concerns regarding [her] work environment . . . that does not disqualify [her] from protection. It is well understood that '[a]n employee's speech will rarely be entirely private or entirely public.'" *Akins*, 420 F.3d at 1304 *(*quoting *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993)). Therefore, courts look to determine whether the "main thrust" of the employee's speech is a matter of public concern. *Id.* (quoting *Morgan*, 6 F.3d at 654–55). The answer to that question "must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48.

Additionally, the public employee must speak on a matter of public concern *as a citizen*, not an employee, to receive First Amendment protection. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.*

The Court finds Strang's complaint contains sufficient detail to find she spoke as a citizen on a matter of public concern. Generally speaking, the public has a keen interest in discovering wrongdoing or breaches of the public trust on the part of its public officials. *See id.* 148–49 ("Nor did Myers seek to bring to light actual or potential wrong-

9

doing or breach of public trust on the part of Connick and others."); *Garcetti*, 547 U.S. at 425 ("Exposing government inefficiency and misconduct is a matter of considerable significance."). "A 'core concern' of the First Amendment is the protection of whistleblowers who report government wrongdoing." *Akins*, 420 F.3d at 1300 (quoting *Bryson v. City of Waycross*, 888 F.2d 1562, 1566 (11th Cir. 1989)). Because Davis was tasked with advising the city and its employees on legal matters, the public had interest in whether he, too, followed the law.

The question of whether Davis in fact broke the law is, at this point, largely academic. But Defendants act as though Strang had to allege with specificity why the gun possession violated Georgia law. Under O.C.G.A. § 16-11-127 (2008), however, it was at the very least a valid question whether Davis lawfully kept a gun on his desk. That the issue was one of public concern is buttressed by the fact that, in the very month of Strang's alleged discovery, the Georgia Assembly debated and passed the Lawful Carry Act to allow or clarify that licensed carriers could, under certain conditions, bring guns in government buildings. Ga. S. Daily Rep., 2010 Reg. Sess. No. 29 (March 24, 2010) (discussing passage of The Lawful Carry Act).

Besides, the instant question is only whether the primary purpose or "main thrust" of Strang's speech was a matter of public concern. *Maggio v. Sipple*, 211 F.3d 1346, 1352 (11th Cir. 2000). At this early stage in the litigation—where the precise content and circumstances of the speech are ambiguous—the Court cannot say it was not. Defendants nevertheless urge the Court to dismiss the claim because Strang made her speech in confidence. Although that fact is relevant to the inquiry, *Morgan v. Ford*, 6 F.3d 750, 754 n.5 (11th Cir. 1993), it is not the smoking gun defendants ascribe to it. Private expression also is entitled to First Amendment protection. *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415–416 (1970) ("Neither the [First] Amendment nor our

10

decisions indicate that [freedom of speech] is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public."). "[A] court cannot determine that an utterance is not a matter of public concern *solely* because the employee does not air the concerns to the public." *Morgan*, 6 F.3d at 754 n.5. Strang's chosen forum is certainly consistent with speech of a purely private concern. *See id.* at 755 (finding, in case where plaintiff voiced concerns to internal affairs and the Office of Fair Employment Practices, that speech did not involve matter of public concern); *Maggio v. Sipple*, 211 F.3d 1346, 1352–53 (11th Cir. 2000) (finding no First Amendment protection for employee who testified at hearing on insubordination). But here the inquiry is only whether she made a plausible claim for relief, and the Court finds she has met that threshold. A reasonable inference from Strang's complaint is that she approached the EEO manager because she was concerned about Davis' judgment and ability to exercise his responsibilities to the citizens of Albany.

### ii. Pickering Balancing

Even if Strang spoke as a citizen on matters of public concern, she must also show her interests as a citizen outweighed the city's interests as an employer. *Villa v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007). To determine whether an employee's interests outweighed the employer's, federal courts apply the balancing test set forth in *Pickering v. Board of Education of Township High School District 205, Will County, Illinois*, 391 U.S. 563 (1968). In *Pickering*, the Supreme weighed "the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of public services it performs through its employees." 391 U.S. at 568.

Courts in the Eleventh Circuit consider a number of factors in course this balancing test, including "(1) whether the speech at issue impedes the government's ability to

11

perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." *Stanley v. City of Dalton*, 219 F.3d 1280, 1289 (11th Cir. 2000) (citations omitted). Additionally, the Supreme Court has "previously recognized as pertinent considerations whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin*, 483 U.S. at 388 (citing *Pickering*, 391 U.S. at 570–73).

Considering these factors, and drawing the allegations in the light most favorable to Strang, the Court finds the complaint alleges sufficient facts to establish that Strang's free speech interests outweighed the city's interests. The City Defendants essentially claim Strang's speech disrupted the functions of the City Attorney's Office because Davis was suspended and embarrassed and her actions required a mandatory office meeting. They also argue Davis lost confidence in Strang and that, when government attorneys are involved, courts should hesitate before interfering with employment decisions.

The Court finds Defendants' arguments unpersuasive. The Court is cognizant of the unique relationship and confidences government attorneys share with their supervisors. *See Sharar v. Bowers*, 114 F.3d 1097, 1103–04 (11th Cir. 1997). But Strang's speech was unrelated to her job duties or the goals of the City Attorney's Office. This is therefore not a situation where the government attorney's actions undermined the office's goals, policies, or attempts to stay out of controversy.

Strang's speech was also not unduly disruptive. She expressed her concerns in private to the city EEO manager. There was no danger of Strang's actions bringing public discredit to the office. *See Rankin*, 483 U.S. at 389 (noting that employer's interests did not outweigh employees', in part because the plaintiff's "speech took place in an area

to which there was ordinarily no public access"). And, frankly, it is strange to argue, as Defendants do, that they should be able to punish employees for speech made in private to the *city*-established EEO office because such speech reduces workplace efficiency and harmony.

Finally, the Court rejects Defendants' attempts to bootstrap Davis' alleged retaliatory actions into justifications for suppressing Strang's speech. "[D]efendants cannot rely on disruption which they instigated or exacerbated to outweigh [plaintiff's] First Amendment rights." *Hufford v. McEnamey*, 249 F.3d 1142, 1149 (9th Cir. 2001) (quoting *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1408 (9th Cir. 1988)). In her complaint, Strang alleges Davis forced her into a mandatory meeting and demanded her resignation, under the pretext she was being disruptive, in retaliation for her speech. Defendants cannot now use that pretext to have the case thrown out on a motion to dismiss.

Given the discrete, confidential nature of Strang's speech, and that it was unrelated to her office duties, the Court finds that the city's interests, at this stage, do not outweigh hers. The Court therefore denies the motion on this ground.

### iii. Retaliatory Conduct likely to Deter a Person of Ordinary Firmness

In addition to her retaliation claim arising out of the termination, Strang arguably alleges a retaliation claim for the harm arising from alleged ridicule, humiliation, and damage to her future employment prospects. The Court dismissed all defendants except Lott and the City of Albany from her retaliatory termination claim. Regarding this second theory of retaliation, Strang fails to establish a claim against all of the defendants except Davis.

For Strang to establish she suffered from retaliatory acts other than termination, she must allege that (1) her speech was constitutionally protected, (2) she "suffered ad-

verse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech," and (3) there is a causal relationship between the retaliatory action and the protected speech. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citations omitted). Strang must allege her protected speech was "a motivating factor behind" the alleged retaliatory acts. *Id.* at 1278.

The Court finds Strang has stated a claim against Davis for retaliatory acts other than termination. She alleges that, soon after he returned from suspension, Davis demanded her resignation and instigated an investigation against her. Further, she claims that Davis appealed her unemployment benefits. The Court finds these facts are sufficient to allege that Strang's speech was Davis' primary motivating factor behind retaliatory acts that would deter a person of ordinary firmness from engaging in the speech.

As to Defendants Adams, Hubbard, Pike, Marietta, Langstaff, and Postell, however, Strang has not alleged any facts to show they took actions likely to deter a person of ordinary firmness from engaging in such speech. Rather, Strang alleges, in conclusory terms, that they held an illegal executive session, "instigated media and/or encouraged local media coverage," and "impliedly accepted and/or condoned" perjury. But these conclusory statements are unsupported by any factual allegations, and they are not entitled to any weight. *See Iqbal*, 556 U.S. at 679. And other than bald statements that defendants acted "in further retaliation against Plaintiff," Strang does not provide any facts to show a causal link between these defendants' actions and her speech. Additionally, other than his decision to terminate her, Strang does not allege any factual allegations showing Lott took other retaliatory action against her.

Strang failed to also establish a causal connection between Slaton's alleged conduct and the protected speech. She does not even allege Slaton knew about her report. Strang instead claims that "Slaton acted as an interested party in Plaintiff's termination

14

because she wanted to handle employment issues on a contract basis for the City, instead of Plaintiff handling such matters." This allegation directly contradicts any claim she retaliated against Slaton *because of* her speech. Moreover, Strang's various claims that Slaton "suborned . . . perjury" and fabricated evidence are again unsupported by factual allegations.

The Court dismisses all defendants except Davis from this claim.

### D. Race Discrimination

The City Defendants claim Strang failed to state a claim of race discrimination under 42 U.S.C. §§ 1981, 1983. They argue the alleged harassment was not severe and pervasive enough to create a hostile work environment and Strang cannot allege disparate treatment because she did not suffer an adverse employment action. The Court concludes that Strang has stated a hostile work environment claim against Davis and disparate treatment claim against Lott and the City of Albany.

### i. Hostile Work Environment

Turning first to the hostile work environment claim, Strang alleges in her complaint that "Defendant City and defendants Davis and Lott maintained a racially hostile work environment, including, specifically, a hostile workplace in the City Attorney's Office." (Doc. 35 ¶ 43.) A hostile work environment is one "permeated with [racially] discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). To establish a hostile work environment, the plaintiff ordinarily must show (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as race; and (4) that

15

the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Although a race-discrimination complaint "need not allege facts sufficient to make out a classic *McDonnell Douglas prima facie* case . . . it must provide enough factual matter (taken as true) to suggest intentional . . . discrimination." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (citations omitted); *see also Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1274 (11th Cir. 2004).

Applying these factors, the Court concludes Strang states a claim against Davis for a hostile work environment. Although it is arguable whether Strang alleges every element of her prima facie case, the facts are sufficient to notice Davis and plausibly suggest race discrimination through a hostile work environment. In particular, the complaint alleges Davis attempted to sabotage Strang's work product and reputation by destroying her evidence and assigning her cases without telling her. Meanwhile, Davis did not take these actions against Strang's black coworkers. Thus, Strang could plausibly show she was subjected to discriminatory intimidation and sabotage because of her race.

Strang's hostile work environment claim against the remaining defendants fails. To establish liability under Section 1983, a plaintiff must show the defendant committed a constitutional violation or that there is a causal connection between the violation and the defendant's conduct. *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010). And "[i]t is well established in this [c]ircuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Goodman v. Kimbrough*, 718 F.3d 1325, 1335 (11th Cir. 2013) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). Strang has not provided any facts that defendants other than Davis harassed her during her

employment. Rather, a fair reading of the complaint shows the other defendants became involved after Davis allegedly instigated her termination.

### ii. Disparate Treatment

The Court finds Strang has stated a disparate treatment claim against Lott and, because Lott is plausibly the final policymaker, the City of Albany. The requirements for stating a disparate treatment claim are well established. The plaintiff must show he suffered an adverse employment action as a result of intentional discrimination. *See Howard v. BP Oil Co.*, 32 F.3d 520, 524 (11th Cir. 1994). A plaintiff may establish intentional discrimination through direct evidence or, in the absence of direct evidence, through circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989), *superseded by statute on other grounds as stated in Walker v. Mortham*, 158 F.3d 1177, 1191 n.30 (11th Cir. 1998).

To establish a prima facie case of discrimination using circumstantial evidence, a plaintiff must show she (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class. *Hooper v. Total Sys. Servs., Inc.*, 799 F. Supp. 2d 1350, 1378 (M.D. Ga. 2011); *see Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1270 (11th Cir. 2004).

The Complaint sufficiently alleges facts showing that Strang belonged to a protected class, was qualified for the job, was fired, and was replaced by someone outside of her protected class. In their reply brief, City Defendants essentially admit that Strang stated a *prima facie* disparate treatment claim. The Court agrees, and the motion to dismiss on this ground is denied as to Defendant Lott and the city.

### E. Qualified Immunity

Finally, the Court must address Davis' and Lott's assertions of qualified immunity. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine is designed to balance the need to hold public officials accountable for abuses of power with the need to shield them from harassment, distraction, and liability when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is an "immunity from suit," not a defense to liability. Therefore, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

But the party invoking qualified immunity must first show he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir. 1990). A defendant may satisfy his burden by showing "objective circumstances which would compel the conclusion that that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting *Baker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. 1981)). "A bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice." *Harbert Intern, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (quoting *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 830 (11th Cir. 1982)).

Defendants acknowledged the law and their burden, but they failed to take the second, critical step of showing circumstances or facts that they acted within the scope

18

of their discretionary authority. Defendants may feel it is obvious. And it may very well seem inconsistent to say that Lott was the official decisionmaker who lacked discretionary authority. But even so, qualified immunity is an affirmative defense. *Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005). It would be inappropriate for the Court to excuse or ease Defendants' burdens simply because the question might be an easy one. *See Cassady v. Owens*, No. CV408-250, 2011 WL 1102787, at *6 (S.D. Ga. Mar. 22, 2011) (denying qualified immunity because defendants failed to show, from the record, that their actions were discretionary); *Pears v. Mobile County*, 645 F. Supp. 2d 1062, 1079 (S.D. Ala. 2009) ("Chief Collier has offered neither evidence nor argument on [whether he acted within his discretionary authority], and the Court will not 'fill in the blanks' by formulating his arguments or presenting his proof for him as to this affirmative defense."). Just as the Court held Strang to her burden of stating a claim for relief, so must the Court hold Defendants to theirs.

## IV. Conclusion

For those reasons, City Defendants' Motion to Dismiss (Doc. 39) is **GRANTED in part** and **DENIED in part**. Defendant Slaton's Motion to Dismiss (Doc. 37) is **GRANTED**. The case shall proceed on the following claims

- First Amendment retaliation against Lott and the City of Albany arising from Strang's termination;
- First Amendment retaliation against Davis from retaliatory acts other than termination;
- Race discrimination from disparate treatment under 42 U.S.C § 1983 against Lott and the City of Albany;
- Race discrimination from a hostile work environment under § 1983 against Davis.

19

The rest of the claims and related defendants are **DISMISSED.**

**SO ORDERED**, this   12th   day of September 2013.

                                              /s/ W. Louis Sands
                                              **THE HONORABLE W. LOUIS SANDS,**
                                              **UNITED STATES DISTRICT COURT**