IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| KATHLEEN STRANG, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | CASE NO.: 1:12-cv-72 (WLS) |
| | : | |
| CITY OF ALBANY, GEORGIA *et al*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

### ORDER

Before the Court is a renewed motion to dismiss from Defendants Willie Adams, Dorothy Hubbard, Christopher Pike, Roger Marietta, Bob Langstaff, and Tommie Postell. (Doc. 70.) For the reasons that follow, Defendants' motion is **DENIED**.

**I.     Procedural Background**

Plaintiff Kathleen Strang is a former assistant city attorney for the City of Albany, Georgia. She brought suit under 42 U.S.C. §§ 1981, 1983 against the city and its mayor, city manager, city attorney, and city commissioners for claims of race discrimination and retaliation in violation of the First Amendment. On the latter claim, Strang argues the defendants retaliated against her after she reported to an EEO manager that her supervisor, the city attorney, brought a gun to work.

The mayor and city commissioners—Willie Adams, Dorothy Hubbard, Christopher Pike, Roger Marietta, Bob Langstaff, and Tommie Postell, respectively—move to dismiss the First Amendment claim on the basis of qualified immunity. Strang alleges these defendants retaliated against her by holding a closed city commission meeting where they heard evidence and argument about her employment and by encouraging media coverage of the event. In a January 16, 2013 motion to dismiss, the defendants

argued they were entitled to qualified immunity on this claim because Strang, by her own allegations, was a disruptive presence in the city attorney's office and, based on the information at their disposal, the defendants made an objectively reasonable decision in holding the meeting.

The Court denied in part and granted in part that motion. The Court found that Defendants were not entitled to qualified immunity because they made no attempt to show they acted within the scope of their discretionary authority. But the Court held that Strang failed to state a claim against the mayor and city commissioners personally and dismissed them from the suit. The Court reasoned that the mayor and city commissioners did not, according to the Complaint, have authority to fire her, so they could not be liable for the termination. The Court also reasoned that a closed meeting would not have deterred a reasonable person from engaging in free speech.

Strang moved the Court to reconsider the latter ruling. On November 11, 2014, the Court granted the motion for reconsideration, finding that Strang stated a retaliation claim against the mayor and city commissioners. This ruling prompted the mayor and city commissioners to renew their motion to dismiss on the basis of qualified immunity. In their new motion, the defendants attempt to show that they acted within their discretionary authority, primarily by producing the City of Albany Charter. After review of Defendants' arguments, the Court concludes they have failed to show they acted within the scope of their discretionary authority.

## II. Discussion

The doctrine of qualified immunity shields government officials performing discretionary functions from personal liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 F.3d 800, 818 (1982). Qualified immunity balances the need to hold public officials accountable for abuses of power with the need protect officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). As a result, the doctrine "protects all but the plainly incompetent or one who is knowingly violating the federal

law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)).

To receive qualified immunity, the public official must first establish that his actions were within the scope of his discretionary authority. *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (citing Bates v. Harvey, 518 F.3d 1233, 1242 (11th Cir. 2008)). "If, and only if, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law." *Harbert Int'l v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).

A government official can show he acted within the scope of his discretionary authority by establishing the challenged actions (1) were undertaken pursuant to the performance of his duties and (2) were within the scope of his authority. *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994). To determine whether a defendant met that burden, it is critical to first define the inquiry. *Harbert Int'l, Inc. v. Harbert*, 157 F.3d 1271, 1282 (11th Cir. 1998). "The inquiry is not whether it was within the defendant's authority to commit the unlawful act. . . . 'Instead, a court must ask whether the acts complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duty.'" *Id.* (quoting *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997)).

The defendants have failed to satisfy their burden of showing the challenged actions fell within the scope of their discretionary authority. In her complaint, Strang alleges the mayor and city commissioners retaliated against her by holding a closed city commission meeting where they heard evidence and argument about her employment, decided to fire her, and condoned perjury. So, the "critical inquiry" for qualified immunity purposes is whether the defendants had discretionary authority to hold commission meetings to make employment decisions. *See Sims v. Metro. Dade Cnty.*, 972 F.F.2d 1230, 1236 (11th Cir. 1992) (finding that officials acted within the scope of their discretionary authority by allegedly suspending plaintiff for the exercise of free speech because "the Defendants duties included the consideration of complaints about the conduct of department employees . . . and the administration of discipline.").

3

To make that showing, Defendants provide the City of Albany Charter. The charter grants power to the city commissioners and mayor to "pass any and all ordinances or resolutions that they deem requisite and proper to the peace, security, welfare, health, good government and convenience of said city." It also gives the commissioners "power and authority to adopt, maintain and declare of force a code of ordinances, resolutions and rules of said city." Thus, while the mayor and city commissioners had authority to pass rules and regulations, nothing in the charter—before its August 2010 amendments—suggests they made employment decisions or held meetings to discuss the same. Oddly, in support of their claim, Defendants point to an August 2010 amendment allowing "the board of city commissioners [to] elect a city manager, city attorney, and such assistant city attorney[s] it shall deem appropriate." But Strang alleges the defendants heard evidence on her employment *before* the amendment. The fact that the city commissioners amended their charter to permit them to make personnel decisions suggests they didn't have that authority in the first place. This interpretation is also consistent with the duties of the Albany city manager, who had power "[t]o remove employees . . . without the consent of the commission."

Nothing else in the Complaint or city charter shows that city commission could convene solely to hear evidence on a personnel decision. Therefore, at this stage of litigation, the Court must deny the motion to dismiss.

### III. Conclusion

For those reasons, Defendants' renewed motion to dismiss (Doc. 70) is **DENIED**.

**SO ORDERED**, this   22nd   day of April, 2014.

                                               /s/ W. Louis Sands
                                               **W. LOUIS SANDS, JUDGE**
                                               **UNITED STATES DISTRICT COURT**